# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FAIR ISACC CORPORATION, ) | |
| ) | |
| Plaintiff/Counterclaim Defendant, ) | |
| ) | Case No. 17-cv-8318 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| TRANS UNION, LLC, ) | |
| ) | |
| Defendant/Counterclaim Plaintiff. ) | |

**MEMORANDUM OPINION AND ORDER**

TransUnion, LLC brings this counterclaim action against Fair Isaac Corporation ("FICO") alleging various forms of anticompetitive conduct in violation of both federal and state law. Currently before the Court is FICO's motion [56] to dismiss several counts of TransUnion's counterclaims. For the reasons explained below, FICO's motion is granted in part and denied in part.

**Background**

The following facts are undisputed unless otherwise noted. FICO is a Delaware corporation with its principal place of business in California. TransUnion is a Delaware limited liability company, with its principal place of business in Illinois. Since the 1950's, FICO has developed and refined systems that determine individuals' credit scores. FICO does this by measuring a person's credit data along with a scoring algorithm. Credit scores allow companies to measure a person's creditworthiness and risk in repaying a credit obligation. TransUnion, Equifax, and Experian are the three major credit bureaus. All three bureaus have different aggregated credit data but use FICO's algorithm to determine a person's credit score.

1

Beginning in 1989, TransUnion and FICO have engaged in licensing agreements which allow TransUnion to provide its customers with credit information using FICO's algorithm. According to the agreements, TransUnion was responsible for generating credit scores, billing and collecting fees from its customers, and making royalty payments to FICO based on the type of service provided. In 2015, FICO hired a company to review TransUnion's compliance with the agreements. According to the inspection, TransUnion underpaid royalties to FICO and violated several contractual obligations.

In its amended complaint, FICO's allegations largely stem from the results of the 2015 inspection. FICO's allegations include claims of breach contract based on TransUnion underpaying royalties, distributing FICO's credit score without authorization, and failing to keep adequate records; breach of good faith and fair dealing stemming from copyright infringement, conversion, and unjust enrichment; and false and misleading advertising campaigns.

In Counts I, II, and IV of its counterclaims, TransUnion alleges FICO committed unlawful actual and attempted monopolization in violation of the Sherman Act, 15 U.S.C. § 2 and the Illinois Antitrust Act, 740 ILCS § 10/3(3). In Counts III and VIII, TransUnion alleges FICO made false and misleading representations in violation of section 43(A) of the Lanham Act, 15 U.S.C. § 1125(a) and the Illinois Deceptive Trade Practices Act, 815 ILCS § 510/2(a)(8). In Counts V through VII, TransUnion alleges various forms of unfair practices in violation of California law. Finally, in Counts IX and X, TransUnion asserts breach of contract and unilateral mistake.

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. To overcome a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and raises the right to relief above a speculative level, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.

Ed. 2d 929 (2007). When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012).

**Discussion**

FICO seeks the dismissal of Counts I, II, IV, V, VI, and X.

*1. Actual and Attempted Monopolization*

FICO argues that TransUnion's claims of actual and attempted monopolization should be dismissed. To plead actual monopolization, TransUnion must allege "the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power." *See Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834, 854 (7th Cir. 2011) (internal citation omitted). To adequately allege attempted monopolization, TransUnion must plead "(1) specific intent to achieve monopoly power in a relevant market; (2) predatory or anticompetitive conduct; and (3) a dangerous probability that the attempt at monopolization will succeed." *See id.* (internal citation omitted). The standard is nearly identical under the Illinois Antitrust Act. *See Hannah's Boutique, Inc. v. Surdej*, 112 F. Supp. 3d 758, 765 n.7 (N.D. Ill. 2015) (St. Eve., J).

FICO's main contention is that TransUnion has not adequately pled any anticompetitive conduct. TransUnion's allegations of anticompetitive conduct stem largely from various provisions in its agreements with FICO. TransUnion begins with the "No Equivalent Products" provision which prohibits TransUnion from selling credit scores that have the same "odds-to-score" relationship as FICO. TransUnion states that FICO requires this provision in order to prohibit TransUnion (and the other credit bureaus) from offering scores with similar metrics, thus preventing competition. But TransUnion maintains that it cannot offer credit scores with a different metric system to customers because "businesses cannot use their scores interchangeably with FICO Scores, for which many lenders' systems are designed." Dkt 71 at 7. Next, TransUnion states that FICO

3

charges lenders a "seven times penalty rate" if the lender provides a consumer with a rival's credit score. *Id.* at 8. TransUnion asserts that this stiff penalty is meant to prevent lenders from providing credit scores from rival companies. Finally, TransUnion targets the "Level Playing Field" provision of their agreement which requires that any price TransUnion pays, be made available to other credit reporting agencies. TransUnion asserts that FICO uses this provision to stifle competition by keeping agencies from using innovation and efficiency to cut costs and receive discounts that it can pass on to its customers.

The Court finds that, at this juncture, TransUnion has adequately pled actual and attempted monopolization. TransUnion alleges that FICO engages in practices that are intended to drive out competition. Obviously, FICO has no duty to help its competitors. *See Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*, 797 F.3d 370, 375-76 (7th Cir. 1986). However, TransUnion puts forth claims that, if proven, could establish that FICO's exclusive dealing provisions are unlawful attempts to "maintain monopoly power through exclusionary conduct." *See Bloyer v. St. Clair County*, 179 F. Supp. 3d 843, 850 (S.D. Ill. 2016) (internal citation omitted). Corporations can use exclusive contracts to maintain monopolies. *See Viamedia, Inc. v. Comcast Corporation*, 335 F. Supp. 3d 1036, 1066 (N.D. 2018) (St. Eve, J.). Parties can also use prices to maintain monopoly power. *See MCI Communications Corp. v. American Tel. and Tel. Co.*, 708 F.2d 1081, 1106-07 (7th Cir. 1983). While it contends that TransUnion fails to state a claim, the substance of FICO's arguments pertains more to the merits of its allegations, which is inappropriate at this stage. Therefore, FICO's motion to dismiss Counts I, II, and IV is denied.

*2. State Law Claims*

FICO argues that TransUnion's state claims should be dismissed. TransUnion alleges that FICO committed violations of California and Illinois competition laws. Specifically, TransUnion alleges that that FICO made public false representations that caused injury to VantageScore, a rival

4

credit scoring company, in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS § 510/2(a),(8). As one example in its counterclaims, TransUnion asserts that FICO took out an advertisement that disparaged VantageScore by name. Hence, the Court finds that TransUnion's claims are sufficiently pled.

Similarly, TransUnions adequately states a claim for violation of California's Unfair Competition and False Advertising laws. TransUnion claims that FICO's false advertisements and anticompetitive conduct largely occurred in California. As such, the Court finds that TransUnion's allegations survive the pleading stage. FICO's motion to dismiss Counts V and VI is denied.

*3. Unilateral Mistake*

FICO moves to dismiss TransUnion's claim for rescission of contract based on unilateral mistake. To state a claim for unilateral mistake under New York law, TransUnion must plead that it (1) it entered into a contract under mistake of material fact and (2) FICO knew of the mistake. *See De Sole v. Knoedler Gallary, LLC*, 137 F. Supp. 3d 387, 429 (S.D.N.Y. 2015). However, "[a] unilateral mistake must be 'coupled with some fraud.'" *Id.* (citing *Allen v. WEstPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)). In its claim of unilateral mistake, TransUnion alleges that it mistakenly forgot to include an exhibit that contained a specific special pricing letter as part of an agreement with FICO. Although TransUnion claims that FICO was aware of TransUnion's mistake, it does not allege fraud. Accordingly, TransUnion's unilateral mistake claim is dismissed without prejudice.

**Conclusion**

For the foregoing reasons, FICO's motion to dismiss [56] is granted in part and denied in part. TransUnion has 60 days to file an amended complaint in accordance with the Court's order.

**IT IS SO ORDERED.**

Date: 3/27/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge