# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | Case No. 17-cv-8318 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| TRANS UNION, LLC, | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

## MEMORANDUM OPINION AND ORDER

Fair Isaac Corporation ("FICO") brings this amended complaint against TransUnion, LLC alleging breach of contract, breach of good faith and fair dealing, copyright infringement, conversion, and false advertising in violation of both federal and state law. Currently before the Court is TransUnion's motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Alternatively, TransUnion moves for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). For the reasons explained below, TransUnion's motion [70] to dismiss is granted in part and denied in part and its motion for a more definite statement is denied.

**Background**

The following facts are undisputed unless otherwise noted. FICO is a Delaware corporation with its principal place of business in California. TransUnion is a Delaware limited liability company with its principal place of business in Illinois. Since 1989, FICO and TransUnion have executed license agreements which allow TransUnion to use FICO's scoring algorithm to sell credit scores ("FICO Scores") to its customers. TransUnion, Equifax, and Experian are the three major credit

1

bureaus. All three bureaus have different aggregated credit data but use FICO's algorithm to determine a person's credit score.

TransUnion also uses FICO's software ("Software Modules") in applying the algorithm to an individual's credit data. TransUnion's customers (lenders) use these credit scores to determine individuals' creditworthiness and risk of repayment. TransUnion was responsible for generating credit scores, billing and collecting fees from its customers, and making royalty payments to FICO based on the type of service provided. The parties executed several different agreements since 1989 that established each party's obligations.

In 2015, FICO hired a third party to conduct an audit of TransUnion's compliance with the parties' agreements. According to FICO, the inspection revealed that TransUnion committed several contractual infractions. In its amended complaint, FICO's allegations largely stem from the results of the 2015 inspection. Specifically, FICO alleges that TransUnion underpaid royalties, committed copyright infringement and conversion, and breached several written agreements. FICO also alleges that TransUnion committed false advertising related to VantageScore, a rival credit company created by TransUnion, Experian, and Equifax.

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. To overcome a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and raises the right to relief above a speculative level, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012).

**Discussion**

TransUnion moves to dismiss FICO's amended complaint entirely, arguing that Counts I through IV fail to satisfy Rule 8 and 10(b), Counts V through VIII fail to state a claim, and Counts IX through XII fail to state a claim and are barred by issue preclusion.

*1. Counts I, II, III, and IV: Breach of Contract*

TransUnion argues that FICO's breach of contract claim should be dismissed for failure to satisfy Rule 8 and 10(b). Rule 8 requires claims to contain a short and plain statement showing that the plaintiff is entitled to relief and be "simple, concise and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). Rule 10(b) states that each claim founded on a separate transaction or occurrence must be stated in a separate count, "if doing so would promote clarity." Fed. R. Civ. P. 10(b).

In Count I of the amended complaint, FICO alleges breach of contract based on TransUnion's failure to pay royalties. Specifically, FICO asserts that since 2011, TransUnion systematically underpaid royalties by underreporting the amount of services it was providing to its customers. For example, FICO alleges that TransUnion reported that its customers were using a total of two types of FICO credit scores in only two databases when it was actually providing 15 types of FICO credit scores in 15 databases.

In Count II of the amended complaint, FICO alleges breach of contract based on TransUnion's unauthorized distribution of FICO Scores. FICO asserts that the agreements restricted how TransUnion was to distribute FICO Scores. For instance, one of the parties' agreements prohibited TransUnion from using FICO Scores related to a "Triggers[1]" process without prior approval. FICO asserts that TransUnion distributed FICO Scores based on the Triggers process without prior approval nonetheless.

---

[1] FICO states that Triggers is defined as "monitoring the daily changes of a population of consumers for certain credit file attributes or changes and then periodically providing "customers" with scores . . .on those Consumers whose attributes or changes match or otherwise meet the Selection Triggering Criteria. Dkt. 63 at 19.

3

In Count III, FICO alleges TransUnion used FICO's software in ways prohibited by the parties' agreements. In Count IV, FICO alleges that TransUnion was contractually obligated to maintain accurate records but did not do so.

The Court finds that FICO's breach of contract claims satisfy Rule 8. Each breach of contract Count is separated by the specific type of contractual breach. While each Count refers to several different agreements TransUnion allegedly breached, the amended complaint references the specific provisions of the agreements, thereby putting TransUnion on notice of the claims asserted against it. TransUnion cites no legal support for the argument that the contracts themselves need to be attached to the complaint. Although it is axiomatic that TransUnion would be in possession of these contracts, any further information needed will be provided in discovery. TransUnion's motion to dismiss Counts I through IV for failure to satisfy Rule 8 and 10(b) is denied.

Alternatively, TransUnion moves for a more definite statement under Rule 12(e). Rule 12(e) motions are appropriate when a complaint is "so vague or ambiguous that the party cannot reasonably prepare a defense." Fed. R. Civ. P. 12(e). However, Rule 12(e) motions are generally disfavored. *See MacNeil Auto. Prods. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 790 (N.D. Ill. 2010) (stating that Rule 12(e) motions should be granted only when the complaint is so unintelligible that the movant cannot respond and should not be used be get additional information) (Gottschall, J.) (internal citation omitted). That is not the case here. FICO's breach of contract claims are pled sufficiently enough that TransUnion can respond. As such, TransUnion's motion for a more definite statement under Rule 12(e) is denied.

*2. Count V: Breach of Implied Covenant of Good Faith and Fair Dealing*

TransUnion argues that Count V should be dismissed because Illinois does not recognize a stand-alone action for breach of implied covenant of good faith and fair dealing. To establish a breach of implied duty of good faith and fair dealing, a party must demonstrate that "the contract

4

vested the opposing party with discretion in performing an obligation under the contract and the opposing party exercised that discretion in bad faith . . . ." *LaSalle Bank Nat'l Assoc. v. Paramount Properties*, 588 F. Supp. 2d 840, 857 (N.D. Ill. 2008) (St. Eve, J.) (internal citation omitted). Nevertheless, it is settled law in Illinois that a breach of good faith and fair dealing cannot be an independent cause of action. *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002) (citing *Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126, 196 Ill.2d 288, 296, 256 Ill. Dec. 289 (2001)). In arguing that Illinois allows this claim as an independent cause of action, FICO relies on 1998 case that predates *Voyles*. Accordingly, to the extent that FICO's claim of good faith and fair dealing is based on Illinois law, TransUnion's motion to dismiss is granted.

*3. Count VI: Copyright Infringement*

TransUnion challenges FICO's copyright infringement claim, arguing that it is simply a rehash of FICO's breach of contract claim. FICO claims that TransUnion infringed FICO's copyrights by making copies of FICO's Software Modules in ways restricted by their agreements. Dkt. 63 at 38. To bring a copyright claim against a licensee, a party must demonstrate that (1) it owns the copyright and (2) that the licensee's actions exceeded the scope of the license. *See Bergt v. McDougal Littell*, 661 F. Supp. 2d 916, 921 (N.D. Ill. 2009) (Lefkow, J.) (internal citation omitted).

The Court find that dismissal of the copyright infringement claim is not appropriate at this stage. The Seventh Circuit has distinguished copyright protection from private contracts stating that while "a copyright is a right against the world," contracts "generally affect only their parties." *See ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454 (7th Cir. 1996). TransUnion does not cite, and the Court has not found, any case law that supports the argument that breach of contract somehow preempts a copyright infringement claim, even when both causes of action have overlapping facts. Whether TransUnion's actions amounted to copyright infringement is a factual issue, and therefore, should

5

not be considered at the 12(b)(6) stage. Accordingly, TransUnion's motion to dismiss Count VI is denied.

*4. Count VII: Conversion of FICO Scores and Software*

TransUnion argues that FICO's conversion claim fails as a matter of law because Illinois does not allow conversion claims based on intangible rights. To establish conversion in Illinois, a plaintiff must demonstrate that "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Joe Hand Promotions, Inc. v. Lynch*, 822 F. Supp. 2d 803, 806 (N.D. Ill. 2011) (Holderman, J.) (citing *Cirrincione v. Johnson*, 703 N.E.2d 67, 70, 184 Ill.2d 109, 234, Ill.Dec. 455 (1998)). Furthermore, it is well established that "Illinois courts do not recognize an action for conversion of intangible rights." *Ams. Nat. Ins. Co. v. Citibank, N.A.*, 543 F.3d 907, 910 (7th Cir. 2008) (internal citation omitted).

FICO alleges that TransUnion committed conversion when it distributed FICO Scores and the Software Modules outside the permitted uses of the parties' agreements. Dkt. 63 at 39. In its response to TransUnion's motion to dismiss, FICO argues that "[w]ith ownership comes a right to possess the property." Dkt. 82 at 13. FICO also contends that it states a claim for conversion because its Software Modules are connected to tangible written code. *Id.*

Neither party cites, and the Court has not found, any legal support that establishes whether software is connected to tangible written code for the purpose of Illinois conversion law. However, the Court need not determine this issue because FICO's conversion claim fails on separate grounds. FICO does not allege that it had an absolute right to immediate possession of the property to which TransUnion refused to return. In any case, that would be a difficult assertion considering that the agreements provided for TransUnion to use the Software Modules and did not provide for the

return at the execution of the parties' agreement. As its claim does not adequately plead conversion, FICO's conversion claim is dismissed without prejudice.

*5. Count VIII: Unjust Enrichment*

TransUnion argues that Count VIII should be dismissed as a matter of law because the parties are subject to a contract. Courts have allowed plaintiffs to plead an alternative claim of unjust enrichment when the claim does not rely on the existence of a contract. *In re: First Farmers Financial Litigation*, No. 14-cv-7581, 2016 WL 5940933 at *6 (N.D. Ill. Oct. 13, 2016) (St. Eve, J.) (collecting cases). In its claim for unjust enrichment, FICO does not allege that the parties were bound by a contract. As such, the Court will permit FICO to plead an alternative claim of unjust enrichment. TransUnion's motion to dismiss Count VIII is denied.

*6. Counts IX, X, XI, and XII: False Statements Related to VantageScore*

In Counts IX through XII, FICO challenges several statements made in VantageScore advertisements. VantageScore's website contained statements such as: "Getting a card? Run your credit check before the bank does," and "Buying a car? Kick the tires on your credit before the dealer does." Dkt 63 at 25. The ads would display internet hyperlinks titled "Show Me My Score [and] Report Now" that would give customers VantageScore in-house scores. FICO alleges that these statements mislead reasonable customers to believe that they would be "obtaining the same score [FICO Scores] that their lender would obtain and rely upon in deciding whether to extend them credit." Dkt. 63 at 25.

FICO also contends that the advertisement stating VantageScore 3.0 "generates consumer credit scores that are more predictive, more consistent, and more stable by using industry-leading analytics to parse credit files differently than older, other models do" falsely implies that VantageScore outperforms FICO scores. Dkt. 63 at 33.

FICO alleges that these statements are false and misleading in violation of section 43(A) of The Lanham Act, 15 U.S.C. § 1125, the Illinois Deceptive and Trade Practices Act, 815 ILCS § 510/2(a), California's Unfair Competition Law, and California's False Advertising Law.

*6.1 Issue Preclusion*

TransUnion argues that Counts IX through XII should be partially dismissed under Rule 12(b)(6) based on issue preclusion. Issue preclusion prevents successive litigation of an issue that was "actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Dexia Credit Local v. Rogan*, 629 F.3d 612, 629 (7th Cir. 2010) (internal citation omitted). To establish issue preclusion, a party must demonstrate "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; the determination of the issue was essential to the judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action." *Id.* (internal citation omitted).

TransUnion points to *Fair Isaac Corp. v. Experian Information Solutions Inc.*, 645 F. Supp. 2d 734, 762-63 (D. Minn. 2009), where the court rejected claims made by FICO that VantageScore was liable for false and misleading statements. TransUnion argues that the central allegation in *Experian* and the instant case is the same.

The Court disagrees with TransUnion that issue preclusion applies in this case. Although FICO alleged false and misleading advertisement in the prior case, the difference in context, timing, and language of the advertisement distinguish the issues. As an illustration, the Court in *Experian* considered the following statements:

> "Most lenders would view your creditworthiness as very poor," "Know where you stand no matter which credit bureau your lender checks," "the same type of score that lenders see," and "Most lenders offer their 'good' rates to consumers in this category."

*See Experian Information Solutions Inc.*, 645 F. Supp. 2d at 762. The Court in *Experian* found that these statements did not imply "that an appreciable number of lenders use the in-house scores of VantageScore in making lending decisions." *Id.*

Notwithstanding, TransUnion overlooks critical differences in the statements at issue in the instant case. First, while FICO claimed that the prior statements falsely conveyed that many lenders use VantageScore's in-house scores, FICO now contends that VantageScore's advertisement implies that consumers are actually getting FICO scores, when they select VantageScore's hyperlink. Second, the statements in the prior case included credit score analysis (i.e. "Most lenders offer their 'good' rates to consumers in this category"), while FICO does not make the same claim in the instant case. Moreover, the court in the prior action did not consider the internet display's effect in causing confusion between receiving FICO Scores as opposed to VantageScore in-house credit scores. The Court finds that the issue in the prior action is not the same, thereby precluding any estoppel effect.

*6.2. Product Superiority*

The Court does find that the second set of challenged statements are puffery. An advertisement that makes exaggerated, grandiose claims about its product or service is considered "puffery" and not statements of fact. *See Martin v. Wendy's International, Inc.*, 183 F. Supp. 3d 925, 935 (N.D. Ill. 2016) (internal citation omitted) (Alonso, J.), *aff'd*, 714 Fed. Appx. 590, 592 (7th Cir. 2018). This Court has recently held that a decision of whether a representation is puffery can be determined as a matter of law. *See Segerdahl Corp. v. American Litho, Inc.*, No. 17-cv-3015, 2019 WL 157924 at *3 (N.D. Ill. Jan. 10, 2019).

VantageScore advertising that model 3.0 "generates consumer credit scores that are more predictive, more consistent, and more stable by using industry-leading analytics to parse credit files differently than older, other models do" are clearly overexaggerated marketing claims about VantageScore's quality of credit scores that buyer's cannot reasonably be expected to rely on. One

9

would expect these types of subjective nonquantifiable statements to be posted on a company's website. That is the very purpose of advertisement. Accordingly, to the extent that FICO's false advertising claims relate to these statements, TransUnion's motion to dismiss is granted.

**CONCLUSION**

For the reasons explained above, TransUnion's motion to dismiss [70] FICO's amended complaint is granted in part and denied in part. FICO's breach of good faith and fair dealing (Count V) and its conversion claim (Count VI) are dismissed without prejudice. To the extent that FICO's false advertisement claims relate to the statement regarding VantageScore 3.0, TransUnion's motion to dismiss is granted. TransUnion's motion to dismiss is denied in all other respects. FICO has 30 days to request leave to file an amended complaint in accordance with this order.

**IT IS SO ORDERED.**

Date: 3/30/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge